**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIELA BITTNER, | ) | CASE NO. 4:26-cv-2725 |
| | ) | |
| | ) | |
| Petitioner, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JERRY GREENE, et al., | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Daniela Bittner ("Bittner" or "Petitioner"), a civil immigration detainee, filed a habeas petition, pursuant to 28 U.S.C. § 2241, challenging her detention pending deportation. (*See generally* Doc. No. 1 (Verified Petition).) Now before the Court is the motion to dismiss filed by Respondents Jerry Greene, Sheriff of Mahoning County; Matthew Putra, Acting Director of the Detroit Field Office of U.S. Immigration and Customs Enforcement ("ICE");[1] Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General (collectively, "Respondents"). (Doc. No. 4 (Return of Writ and Motion to Dismiss).) Petitioner opposes the motion (Doc. No. 5 (Response)), and Respondents have replied. (Doc. No. 8 (Reply).) For the reasons that follow, Respondents motion is granted, in part, Petitioner's due process claim is dismissed without prejudice, and the remainder of the petition is transferred to the relevant court of appeals.

---

[1] On July 12, 2026, Putra was sworn in as Acting Director of the Detroit Field Office, and is, therefore, automatically substituted for Kevin Raycraft as a proper party in this action. (Doc. No. 4, at 1 n.1 (citing Fed. R. Civ. P. 25(d)).)

## I. BACKGROUND

Bittner is a native and citizen of Germany, who was admitted to the United States on November 19, 2022, under the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187(a)(1), which allows citizens of certain countries to enter the United States as a tourist for 90 days *without* a visa. (Doc. No. 4-5 (Declaration of Selina Lopez) ¶¶ 4–5; *see* Doc. No. 1 ¶ 18.[2]) By the terms of the VWP, Bittner was authorized to remain in the United States until February 16, 2023. (Doc. No. 4-5 ¶ 5.) There is no dispute that Bittner did not leave the United States upon the expiration of the 90-day statutory period. (*See* Doc. No. 1 ¶ 19.) Bittner is married to a United States citizen. On December 2, 2022, her "spouse filed a Petition for Alien Relative (1-130), listing Bittner as a beneficiary." (Doc. No. 4-5 ¶ 6; *see* Doc. No. 1 ¶¶ 6, 21.) The 1-130 petition was denied by United States Citizenship and Immigration Services ("USCIS") on June 5, 2025. (Doc. No. 4-5 ¶ 6.)

On October 15, 2026, while Bittner was preparing to board a domestic flight with her husband to Miami, Florida, from Elmira Airport in New York, federal agents approached her and took her into ICE custody. (Doc. No. 1 ¶¶ 25–26, 28; Doc. No. 4-5 ¶ 9.) Respondents produce documents they maintain were presented to Bittner.[3] Specifically, Respondents contend that, at the time of her arrest, Bittner was presented with a Warrant for Arrest of Alien, signed October 14,

[2] In her petition, Bittner alleges that she entered the country "pursuant to a B-2 tourist visa and has remained in the United States since that time." (Doc. No. 1 ¶¶ 1, 18.) In response to Respondents' motion, Bittner acknowledges that her petition erroneously stated that she was granted a B-2 visitor visa. (Doc. No. 5, at 1.) She concedes that "Respondents' records establish that she was instead admitted under the [VWP]." (*Id.* at 1–2.)

[3] According to the habeas petition, Bittner never received a "Form 1-200, Warrant for Arrest of Alien," an administrative arrest warrant, or "a Form 1-862 Notice to Appear or a Form I-286 Notice of Custody Determination at or around the time of her arrest." (Doc. No. 1 ¶¶ 30–32.) This potential factual dispute is immaterial to the motion to dismiss because Bittner's arguments against dismissal relate to the sufficiency of the documents appended to Respondents' motion. (*See* Doc. No. 5, at 2 (Respondents' "own evidence raises serious questions whether that purported final order was lawfully issued.").)

2026. (Doc. No. 4-1 (Ex. A1), at 2;[4] Doc. No. 5-4 ¶ 9.) "Once in custody, Bittner was transferred to the Syracuse ERO [Enforcement and Removal Operations]," where she was presented with a VWP Notice of Intent to Issue a Final Administrative Removal Order ("NIT"), dated October 15, 2026. (Doc. No. 4-1 (Ex. A3), at 5–6; Doc. No. 4-5 ¶ 10.) Still on October 15, 2026, Bittner's file was forwarded to the Buffalo, New York Acting Field Office Director for execution of a VPW Final Administrative Removal Order ("FARO"). (Doc. No. 4-3 (Ex. C); Doc. No. 5-4 ¶ 11.) According to Respondents, Bittner was served with a second FARO, dated October 22, 2026, after it was determined that Bittner's file was lost in transit. (Doc. No. 4-5 ¶ 13; Doc. No. 4-4 (Ex. D).)[5]

The NIT alleges that: (1) Bittner is not a citizen or national of the United States; (2) she is a native and citizen of Germany; (3) she was admitted to the United States on November 19, 2022, for a period of 90 days under the VWP "not to exceed February 16, 2023"; and (4) she remained in the United States beyond February 16, 2023, "without authorization" from Immigration and Naturalization Services ("INS") or the DHS. (Doc. No. 4-1 (Ex. A3), at 5.) Pertinent to the present motion, the NIT also advises the recipient that they have 48 hours in which to "**contest any of the above factual allegations or your removability**[.]" (*Id.* (bolding in original).) Further, the NIT contains a section that permits the recipient to indicate whether they contest the allegations, request asylum, or request withholding of deferral of removal. (*Id.* at 6.) This section contains the words "REFUSED TO SIGN" above the place for the alien's signature and is also dated October 15, 2026. (*Id.* (capitalization in original).) Additionally, the NIT states that "After having provided the

[4] Respondents concede that the arrest warrant is missing the signature on the Certificate of Service. (Doc. No. 4-5 ¶ 9; *see* Doc. No. 4-1 (Ex. A1), at 2.)

[5] The documents appended to Respondents' motion also include an Affidavit In An Administrative Proceeding, dated October 15, 2026, and purportedly signed by Bittner. (Doc. No. 4-1 (Ex. A2), at 3–4.)

alien with a 48-hour period to respond (if applicable) to these allegations and charge(s), the alien has . . . [f]ailed or refused to respond to the allegations." (*Id.*) This section is dated October 15, 2026, at 10:03 p.m., the exact same date and time the form indicates Bittner was first presented with the NIT. (*Id.*)

On October 16, 2026, Bittner filed the present habeas petition. Bittner was being held in the Mahoning County Jail at the time of filing (Doc. No. 1 ¶¶ 1, 36), and the petition, therefore, was properly filed in the Northern District of Ohio. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004) (A habeas corpus petition brought under 28 U.S.C. § 2241 must be filed in the district having jurisdiction over the petitioner's custodian.) Bittner was transferred several times while in ICE custody and, as of October 22, 2026, is detained at the ICE staging facility in El Paso, Texas. (Doc. No. 5, at 1; Doc. No. 4-5 ¶ 12.) Because she was released from the custody of the Mahoning County Jail, the Court grants Respondent Greene's separate motion to dismiss. (Doc. No. 7; *see* Doc. No. 7-1 (Ex. A, Release Receipt Report).)

Bittner challenges the procedures by which she was arrested and detained. (*See* Doc. No. 1 ¶ 8; *see id. generally* ¶¶ 55–74; Doc. No. 5, at 4–5.) She also contends that she is being held unlawfully without the benefit of an individualized bond hearing, in violation of 8 U.S.C. § 1226(a) and *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026). (Doc. No. 1 ¶¶ 45–46.) She raises claims for violations of 8 U.S.C. §§ 1226(a) and 1357(a)(2) and applicable regulations (*id.* ¶¶ 101–11), violation of procedural due process (*id.* ¶¶ 112–18), violation of substantive due process (*id.* ¶¶ 119–26), and unlawful custody under 28 U.S.C. § 2241 (*id.* ¶¶ 127–33). In addition to various declarations that Respondents have violated her statutory and constitutional rights,

Bittner seeks immediate release and restoration of her custody status and conditions of release that existed immediately before her arrest.[6] (Doc. No. 1, at 20.)

The Court directed Respondents to show cause why the petition should not be granted and set a briefing schedule. (Doc. No. 2 (Show Cause Order).) On October 22, 2026, Respondents filed their "Return of Writ and Motion to Dismiss." (Doc. No. 4.) In their motion, Respondents posit that the petition should be dismissed because Bittner is "lawfully detained pursuant to 8 U.S.C. § 1187, which governs the [VWP], and 8 U.S.C. [§] 1231." (*Id.* at 1.) According to Respondents, Bittner "waived any right to contest her removal," other than on the basis of asylum, which she has not pursued. (*Id.* at 1, 2.) Because she is a "VWP violator," Respondents insist that "Bittner is under mandatory detention pursuant to 8 U.S.C. § 1187, and 8 U.S.C. § 1226(a) is not applicable." (*Id.* at 1.)

In her response, Bittner concedes that she was admitted under the VWP. (Doc. No. 5, at 1–2.) Further, she "does not dispute that she overstayed her VWP admission[,]" nor does she "seek reconsideration of the underlying factual determination of removability." (*Id.* at 3.) She also does not suggest that she is pursuing asylum. (*See* Doc. No. 5, at 1–9.) Rather, she challenges the validity of the FARO because it was issued the same day as the NIT, without the 48-hour period for appeals contemplated by the NIT. (*Id.* at 4–5.) Because Respondents failed to comply with the "legal prerequisites for invoking mandatory detention under § 1231(a)[,]" she maintains that there is no "operative final removal order," and her detention is governed by § 1226(a). (*Id.* at 3.)

---

[6] Bittner "suffers from significant vision impairment and relies on contact lenses to see adequately and function independently." (Doc. No. 1 ¶ 37.) According to the petition, "[s]ince her detention," Bittner has been deprived access to her contact lenses. (*Id.*) As part of its Show Cause Order, the Court directed Respondents to provide Bittner with her necessary contact lenses and advise the Court of their efforts to comply with the Court's directive. (Doc. No. 2, at 3.) On November 2, 2026, Respondent Putra filed a notice advising that Bittner received her contact lenses on October 30, 2026, and that Bittner was scheduled to meet with an optometrist. (Doc. No. 6 (Notice).)

In reply, Respondents argue that the FARO is valid and enforceable because there is no statutorily-required 48-hour notice period. (Doc. No. 8, at 1–2.) Moreover, they suggest that any irregularities in the issuance of the initial FARO are moot, given that ICE issued Bittner a second FARO on October 22, 2026, more than 48-hours after it served the NIT. (*Id.* at 2.) In any event, Respondents maintain that Bittner waived her right to contest the removal process by virtue of her participation in the VWP. (*Id.* at 1.) Additionally, Respondents insist that Bittner's current detention does not violate due process. (*Id.* at 3–4.)

## II. HABEAS CORPUS STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (citing U.S. Const. Art. 1, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

The fundamental protections of habeas corpus apply in the immigration context. *See Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (citations omitted). That said, as set forth below, a district court's habeas powers are somewhat limited in the immigration context. *See Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) (citations omitted). Nonetheless, "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal." *Jiang Lu*

*v. U.S. ICE*, 22 F. Supp. 3d 839, 841 (N.D. Ohio 2014) (citing *Demore v. Kim*, 538 U.S. 510, 517–18, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)).

## III. DISCUSSION

### A. Waiver Under the VWP

As previously noted, the VWP allows eligible aliens to enter the United States "as a nonimmigrant visitor . . . for a period not exceeding 90 days." 8 U.S.C. § 1187(a)(1). Participation in the program, however, comes with conditions. "An alien may not be provided a waiver under the program unless the alien has waived any right [to]," among other things, "contest, other than on the basis of an application for asylum, any action for removal of the alien." § 1187(b)(2); *see* 8 C.F.R. § 217.4(b)(1) (a noncitizen admitted under the VWP may be removed "without referral of the alien to an immigration judge" unless the alien applies for asylum). Courts have described this waiver as the "linchpin of the program; it allows VWP participants to enter the country expeditiously while streamlining their removal." *Lavery v. Barr*, 943 F.3d 272, 273 (5th Cir. 2019).

"'Ordinarily, due to the reciprocal-waiver agreement, federal courts lack jurisdiction over non-asylum-based, due-process challenges to the removal of the VWP' visitor." *Mendez Perez v. Whitaker*, 748 F. App'x 51, 53 (6th Cir. 2019) (quoting *Lacey v. Gonzales*, 499 F.3d 514, 518 (6th Cir. 2007) (citing *Handa v. Clark*, 401 F.3d 1129, 1133–35 (9th Cir. 2005) ("When the government decides to remove a VWP alien, the alien has already waived the right to dispute or litigate the removal. . . . Requiring a hearing before an [immigration judge] would make little sense[.]"))). A federal court's jurisdiction under the VWP is limited to "answer[ing] two questions: first, whether [the petitioner] entered the United States under the VWP; and second, whether [s]he asked for asylum." *Id.*

Here, Bittner concedes that she entered the country under the VWP (Doc. No. 5, at 1–2), and she does not contend that she has asked for asylum (*see id.* at 1–9). Moreover, she admits that she overstayed beyond the statutory 90-day period, and that she is removable. (*Id.* at 3, 9.) This would seem to be the end of the road for federal jurisdiction. *See Mendez Perez*, 748 F. App'x at 53 (finding no jurisdiction because "under the statutes at issue here and our own precedents, we lack the power to undo [the petitioner's] waiver" under the VWP); *see also Lacey*, 499 F.3d at 518 ("That an alien participating in the VWP is not entitled to judicial review is even more obvious when, as in this case, the alien has violated the terms of his visa waiver by remaining in the United States after the expiration of his authorized stay." (citing *Ferry v. Gonzales*, 457 F.3d 1117, 1127–28 (10th Cir. 2006) ("Indeed, the regulations classify an alien who was admitted to the VWP and has overstayed his visa as an alien not entitled to removal proceedings under . . . the Act."))); *see, e.g.*, *Pomaquiza Loja v. Brophy*, No. 26-cv-512, 2026 WL 1543181, at *5 (W.D.N.Y. June 2, 2026) (petitioner waived any challenge to the fact that he was not issued a Notice to Appear "because he waived those rights upon his entry to the United States under the" VWP).

Petitioner resists this conclusion, suggesting that her status as a VWP violator "does not resolve the fundamental question whether Respondents possessed lawful authority to detain" her. (Doc. No. 5, at 2.) Because Bittner has attempted to couch her petition in terms of challenging her detention, rather than her removal, the Court will, in an abundance of caution, reach the question of the statutory authority governing her detention. *See generally Jiang Lu*, 22 F. Supp. 3d at 841 (district courts retain jurisdiction to entertain challenges to immigration detention unrelated to the final order of removal (citation omitted)).

**B. Statutory Basis for Detention and this Court's Jurisdiction over the FARO**

The parties have identified several different statutory provisions they believe support Bittner's detention. Bittner insists that her detention is under 8 U.S.C. § 1226(a). Section 1226(a) provides noncitizens "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). An alien detained under § 1226(a) awaiting a decision on removal is entitled to an individualized bond hearing and determination. *Lopez-Campos*, 175 F.4th at 734.

Respondents, however, suggest that Bittner "is under mandatory detention pursuant to 8 U.S.C. § 1187[.]" (Doc. No. 4, at 1.) Respondents' reliance on this statutory provision is problematic because, as Bittner correctly notes, § 1187 says nothing about the detention of individuals who have overstayed under the VWP. (Doc. No. 5, at 3); *see Molina v. Soto*, No. 25-cv-16880, 2025 WL 3281820, at *3 (D.N.J. Nov. 25, 2025) ("the VWP does not have its own detention provision, and the detention of an alien . . . must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings" (quotation marks and citations omitted)); *Nicholas T. v. Noem*, 1:25-cv-313, 2026 WL 1010750, at *1 (S.D. Tex. Mar. 30, 2026) ("This provision does not contain language authorizing detention, much less mandatory detention." (citing 8 U.S.C. § 1187(c)(2)(E)). Most courts that have addressed the issue have concluded that § 1187 does not support detention of a VWP violator. *See Pomaquiza Loja*, 2026 WL 1543181, at *3 (collecting cases).

Respondents also cite 8 U.S.C. § 1231, and the Court finds that this statutory provision provides a much better fit. Under that section, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. §

1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." § 1231(a)(2)(A). Congress' use of the phrase "shall detain the alien" means that detention during this time period is mandatory. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 528, 141 S. Ct. 2271, 210 L. Ed. 2d 656 (2021) ("During the removal period, detention is mandatory."); *see Zadvydas*, 533 U.S. at 683. As previously noted, Bittner does not seriously challenge the fact that she has overstayed under the VWP, that she has not sought asylum, or that she has been issued a FARO. Because she has been ordered removed, and there is no pending asylum application, she is subject to mandatory detention under § 1231. *See Lee v. Warden, Buffalo Fed. Det. Facility*, 6:26-cv-6380, 2026 WL 1413151, at *5 (W.D.N.Y. May 20, 2026) ("Because Petitioner's asylum-only proceedings are no longer pending, the VWP FARO in his case constitutes a final order of removal making him subject to detention under 8 U.S.C. § 1231(a)(2)" (collecting cases)).[7]

[7] Bittner's cited authorities are inapposite. In *Molina*, the government did "not contend that [p]etitioner is detained under 8 U.S.C. § 1231 pursuant to a final order of removal[.]" 2025 WL 3281820, at *3. The court found that the petitioner was detained under § 1226(a), "pending determination of his removal." *Id.* In *Quispe v. Becerra*, the petitioner was issued a VWP FARO but she also requested asylum. No. 1:25-cv-2002, 2025 WL 3774570, at *2 (E.D. Cal. Dec. 31, 2025). It is well settled that a VWP FARO is not considered a final order of removal until asylum-only proceedings are complete. *Condappa v. Field Office Dir., Detroit Field Office, U.S. Immigr. & Customs Enf't*, No. 3:26-cv-933, 2026 WL 3079841, at *3 (N.D. Ohio Oct. 15, 2026) ("[C]ourts of appeals that have considered the issue in the past have all held that a FARO in a VWP case is not final until the alien's asylum application, if any, has been denied." (citations omitted)). Because the petitioner's removal in *Quispe* was not final, as she was still in asylum-only proceedings, the court concluded that she was detained pursuant to § 1226(a). *Quispe* at *4–5. Unlike these cases, Bittner is not awaiting a determination on her removal, nor is she in asylum-only proceedings. Accordingly, detention under § 1226(a)—governing aliens awaiting a decision on removal—does not apply. Bittner's citation to *Pomaquiza Loja* also fails to move the needle. There, the petitioner, like Bittner, had overstayed under the WVP and was issued a FARO. 2026 WL 1543181, at *4. While the court was not persuaded by the argument that the petitioner was properly detained under § 1187, it agreed with the government that detention was appropriate under § 1231, as the petitioner was an alien subject to a final removal order. *Id.* at *3–5.

Bittner, nevertheless, persists that she is being held under § 1226(a) due to her belief that the FARO issued on October 16, 2026 (and presumably also the one issued on October 22, 2026) is null and void because she was not afforded the 48-hour notice period provided in the NIT. She argues Respondents "cannot establish lawful custody merely by invoking the existence of a removal order while leaving substantial questions unanswered concerning the procedures by which that order was issued." (Doc. No. 5, at 3.) Without a valid FARO, she believes she is detained "pending a decision on removability[,]" which would fall under § 1226(a). (*Id.* at 7.) Respondents address this argument on the merits, insisting that the FARO was properly issued, and, in any event, a second FARO was issued on October 22, 2026, well beyond the 48-hour period. (Doc. No 8, at 1–3.) Thus, according to Respondents, there is no basis to conclude that Bittner is held under § 1226(a) as someone who is awaiting a determination on removal. (*Id.* at 3.)

The Court finds that it lacks the jurisdiction to address the parties' arguments surrounding the validity of the FARO(s). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (citations omitted). District courts "have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*," even if the parties do not question the court's jurisdiction.[8] *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

[8] Given the time-sensitive nature of the proceedings—Bittner's impending removal—the Court did not seek supplemental briefing on the issue of jurisdiction.

Section 106(a) of the REAL ID Act of 2005, H.R. 1268, 109th Cong. (2005) (enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231, amended § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, and addresses which federal courts have jurisdiction to review an order of removal. As amended, § 1252 provides that "a petition for review filed with an appropriate court of appeals shall be the sole and exclusive means for judicial review of an order of removal[.]" 8 U.S.C. § 1252(a)(5). "This provision precludes district courts from hearing a challenge, be it direct or indirect, to an order of removal." *Obioha v. Whitaker*, No. 18-cv-4012, 2019 WL 1118092, at *3 (D. Md. Mar. 11, 2019) (citation omitted); *see Alvarez-Lopez v. Adducci*, No. 12-cv-11952, 2012 WL 2407702, at *2 (E.D. Mich. June 26, 2012) ("Notably, the Sixth Circuit Court of Appeals and other courts, have recognized that the REAL ID Act provides that the *only* court with jurisdiction to review *an order of removal* is the relevant court of appeals. (citations omitted, emphases in original)); *Ferreyra v. Nielson*, No. 18-cv-1005, 2018 WL 4496330, at *2 (E.D. Wis. Sept. 18, 2018) (collecting cases finding no jurisdiction to raise indirect challenges to a final removal order in federal court); *Ba v. Holder*, No. 09-cv-1465, 2009 WL 5171793, at *2 (E.D. Mich. Dec. 24, 2009) (noting that "the jurisdiction-stripping effect of the REAL ID amendments applies both to direct and indirect challenges to an alien's removal order" (quotation marks and citation omitted)).

It is true that detention issues unrelated to a final order are addressable by the district court in a § 2241 proceeding. *See Altez v. Smith*, No. 26-cv-187, 2026 WL 1256970, at *7 (E.D. Wis. May 7, 2026) (citing, among authority, *Kellici v. Gonzales*, 472 F.3d 416, 419 (6th Cir. 2006) ("Where a habeas case does not address the final order, it is not covered by the plain language of the [REAL ID] Act.")). Bittner claims that she is raising such a detention issue. She argues that

she does not contest the FARO, *per se*, rather, she challenges the "*procedures* by which that order was issued." (Doc. No. 5, at 3 (emphasis added); *Id.* (Bittner "challenges whether DHS complied with the legal prerequisites for invoking mandatory detention under § 1231(a).")

A district court in Wisconsin recently refused to entertain a virtually identical argument. Like Bittner, the petitioner in *Altez* was admitted under the VWP and remained in the country beyond the statutory period. 2026 WL 1256970, at *2–3. On the day of Altez's arrest, he was issued a NIT, which contained the same 48-hour period in which to contest removability. *Id.* at 3. Later on the same day, ICE issued a FARO applicable to the petitioner. *Id.* The petitioner challenged several "procedural defects" in the issuance of the FARO, including that it was issued the same day as the NIT and "before [p]etitioner's forty-eight hour period to contest the removal order expired, thereby depriving him a meaningful opportunity to be heard." *Id.* at *6–7 (quotation marks and citation omitted).

The court in *Altez* concluded that the "[p]etitioner's challenge to the validity of the [FARO was] not properly before" it. Specifically, the court reasoned:

> "When a claim by an alien, however it is framed, challenges the *procedure* and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *Martinez* [*v. Napolitano*], 704 F.3d [620,] 623 [(9th Cir. 2012)] (emphasis added) (citing *Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1082–83 (9th Cir. 2010) and *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010)).
>
> That [p]etitioner frames Count Two as an unlawful detention claim does not save it, because his theory of unlawful detention (as developed in his opposition brief) is intertwined with and indeed squarely challenges the validity of his [FARO]. *See, e.g.*, *Adebayo v. Gonzales*, No. 06 C 1026, 2006 WL 642628 (N.D. Ill. Mar. 7, 2006) (denying petition for lack of jurisdiction where petitioner 'contend[ed] that the removal order would not have been entered against him but for the incompetence of the attorney who represented him in the immigration proceedings"). Petitioner is not "challeng[ing] the existence of his removal order, but alleges errors "on which the validity of the final order [are] contingent," and the

> relief he seeks would clearly be inconsistent with the order of removal. *Verde-Rodriguez v. Att'y Gen., U.S.*, 734 F.3d 198, 206 (3d Cir. 2013) (quoting *Immigr. & Naturalization Servs. v. Chadha*, 462 U.S. 919, 938 (1983), *abrogated on other grounds by Inestroza-Tosta v. Att'y Gen.*, 105 F.4th 499 (3d Cir. 2024). Count Two is therefore not among those claims that are "independent of challenges to removal orders" that the Court is permitted to entertain in a § 2241 petition. *Hernandez* [*v. Gonzalez*], 424 F.3d [42,] 42–43 [(1st Cir. 2005)] (citation omitted).

*Id.* at *8.

The Court finds this reasoning persuasive. Like the petitioner in *Altez*, Bittner readily concedes that she is challenging the procedures by which the FARO was issued. (*See, e.g.*, Doc. No. 5, at 2–3.) And while she claims she is merely raising a detention argument, her theory of illegal detention hinges on a determination that the FARO is invalid or inoperative.[9] (*See id.* at 3 ("Absent an *operative* final removal order, Respondents must justify Petitioner's detention under § 1226(a) and demonstrate compliance with its applicable safeguards." (emphasis added)).) Indeed, the Court cannot arrive at Bittner's conclusion that she is detained under § 1226(a) without first invalidating the FARO. Her detention argument is, therefore, "inextricably linked" to the FARO, and this Court is without jurisdiction to entertain it. *Cf. Neilova v. Noem*, 812 F. Supp. 3d 836, 839–40 (N.D. Ill. 2025) (collecting cases finding a district court lacks jurisdiction over challenges to a final order of removal in VWP cases). Accordingly, the Court must assume without deciding that Bittner was issued a valid FARO and is subject to mandatory detention under § 1231.

[9] In reaching this conclusion, the Court stresses that Bittner is not suggesting that the FARO does not exist. She acknowledges that Respondents issued the FARO but that they did so without following their own procedures and regulations. (*See* Doc. No. 5, at 5 ("The Government cannot invoke the finality of the October 15 FARO to justify mandatory detention under § 1231(a) without addressing whether it complied with the procedures required before that order was issued.") This distinguishes the present case from *Casillas v. Holder*, 656 F.3d 273, 276 (6th Cir. 2011), where the Sixth Circuit held that a district court could entertain a "challenge [to] the existence of a removal order[.]" *See, e.g., Alvarez-Lopez v. Adducci*, No. 12-cv-11952, 2012 WL 2407702, at *3 (E.D. Mich. June 26, 2012) (finding habeas jurisdiction where the petitioner's claim was based on a *conditional* final order).

*See Herrara v. Rardin*, No. 4:24-cv-11492, 2024 WL 5059149, at *6 (E.D. Mich. Dec. 10, 2024) ("[U]ntil Petitioner takes advantage of the proper procedures to effectively challenge his Final Order of Removal, it remains valid, and the Court must evaluate his habeas claim on the assumption that it is valid."), *aff'd*, No. 25-1007, 2025 WL 3904402 (6th Cir. Aug. 8, 2025) (citation omitted).[10]

**C. Due Process**

The Court, nonetheless, retains jurisdiction to consider any due process challenges to the length of Bittner's detention under § 1231, *see Zadvydas*, 533 U.S. at 689; *Eligharib v. Napolitano*, 600 F.3d 597, 605–06 (6th Cir. 2010) (habeas petition challenging alien's arrest and detention was properly filed in the district court), but such a challenge at this time would be premature. Section 1231 provides for a 90-day period for removal. 8 U.S.C. § 1231(a). Bittner was taken into custody on October 15, 2026, and is, therefore, still well within the mandatory detention period set forth in the statute.

After the expiration of the 90-day statutory period, the government may continue to detain the noncitizen, provided that detention is limited "to a period reasonably necessary to bring about that alien's removal from the United States[.]" *See Zadvydas*, 533 U.S. at 689. The Supreme Court has determined that a period of six months is "presumptively reasonable." *Id.* at 701. To establish a due process violation during this extended period, the noncitizen bears the burden of

[10] Petitioner filed a motion for leave to file a limited sur-reply in order to bring to the Court's attention a recent unpublished decision out of the Eastern District of New York commenting on ICE's practice of dispensing with the 48-hour notice period set forth in the NIT. (Doc. No. 10 (Motion for Leave); Doc. No. 10-1 (*Botas v. Maldonado*, No. 2:26-cv-5991, Doc. No. 14 (Memorandum & Order) (E.D.N.Y. Nov. 4, 2026)).) While the New York district court did not reach the propriety of the practice, it looked upon it with disfavor and questioned whether such conduct rendered the FARO invalid. (Doc. No. 6 n.1.) The Court grants the motion for leave to file the sur-reply and agrees with the sentiment that such a practice may be problematic, but that is not a question for this Court to decide.

demonstrating that her removal is not reasonably foreseeable. *Id.* "Once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

At this point there is nothing in the record to suggest Bittner will not be removed within the 90-day window set by Congress, let alone within the presumptively reasonable sixth-month period set forth in *Zadvydas*. Again, there are no pending asylum-only proceedings. While Respondents state that a new travel document will need to be secured for Bittner, they report that they are actively pursuing such a document. (Doc. No. 4-5 ¶ 14.) Once the travel document is obtained, Respondents foresee no institutional barriers to removal. (*Id.* ¶ 15.) Without any impediments that would suggest that removal is not reasonably foreseeable, the Court is unable to find that Bittner has been denied due process. Should her circumstances change, Bittner is free to renew her due process challenge.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Respondents' motion to dismiss (Doc. No. 4), in part, and finds that Bittner is properly detained under 8 U.S.C. § 1231. The Court also grant's Respondent Greene's separate motion to dismiss (Doc. No. 7), and he is dismissed from this action. Further, the Court dismisses, without prejudice, any claim that Bittner's current detention under § 1231 violates due process. To the extent the habeas petition can be interpreted as challenging the validity of the FARO, and any such challenge is not otherwise waived by the VWP, the action is transferred to the United States Court of Appeals for the Second Circuit.[11]

**IT IS SO ORDERED**.

Dated: November 12, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

[11] Under 28 U.S.C. § 1631, a court lacking subject matter jurisdiction "shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed[.]" Because Bittner appears to challenge the validity of the FARO, such an action must be "filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). The FARO in this case was issued by the Director of the ICE Field Office in Buffalo, New York. (*See* Doc. No. 4–3.) Because expedited removal proceedings typically do not involve an immigration judge, at least one court has concluded that the "same venue rule [in § 1252(b)] applies to removal proceedings presided over by any [immigration officer], not just by an immigration judge." *Gonzales v. Chertoff*, 454 F.3d 813, 816 n.2 (8th Cir. 2006); *see also Osuna-Gutierrez v. Johnson*, 838 F.3d 1030, 1034–35 (10th Cir. 2016) (citing *Gonzalez* with favor). Accordingly, the Second Circuit would appear to have jurisdiction to entertain such an appeal.